**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **TAYLOR DIGGS,**<br><br>Plaintiff,<br><br>v.<br><br>**EQUIFAX INFORMATION SERVICES, LLC,**<br><br>Defendant. | CASE NO. ______________________<br><br>Complaint for a civil case<br><br>Jury Trial: ☒ Yes ☐ No |

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, TAYLOR DIGGS ("Plaintiff"), by and through the undersigned counsel, and hereby sues Defendant EQUIFAX INFORMATION SERVICES, LLC ("Equifax"), and states as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages, exclusive of attorney's fees and costs, brought by Plaintiff against Defendant Equifax for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA"), and specifically for Equifax's failure to clearly and accurately disclose to Plaintiff all information in Plaintiff's file at the time of Plaintiff's request, as required by 15 U.S.C. § 1681g(a)(1).

## JURISDICTION AND VENUE

2. Jurisdiction of this Court arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3. Equifax is subject to the provisions of the FCRA and to the personal jurisdiction of this Court because Equifax is organized under the laws of the State of Georgia, maintains its principal place of business within this District, and conducts continuous and systematic business within this District.

4. Venue is proper in the Northern District of Georgia pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because Equifax resides in this District and because a substantial part of the events and omissions giving rise to Plaintiff's claim — including the assembly, preparation, and issuance of the consumer file disclosure at issue — occurred in this District.

**PARTIES**

5. Plaintiff is a natural person residing in Mansfield, Tarrant County, Texas.

6. Plaintiff is a "consumer" within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

7. Defendant Equifax Information Services, LLC is a Georgia limited liability company with a principal business address of 1550 Peachtree Street NW, Atlanta, Georgia 30309.

8. Equifax is registered to conduct business in the State of Georgia, where its registered agent is Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

9. Equifax is a nationwide "consumer reporting agency" ("CRA") as defined by 15 U.S.C. § 1681a(f). In exchange for fees, dues, or on a cooperative nonprofit basis, Equifax regularly engages in the practice of assembling and evaluating consumer credit information and other information concerning consumers for the purpose of furnishing consumer reports to third

parties. Equifax uses the mail, the internet, and other instrumentalities of interstate commerce to prepare and distribute those reports. Equifax is therefore fully subject to, and aware of, its obligations under the FCRA.

## FACTUAL ALLEGATIONS

### *Plaintiff's August 10, 2026 Consumer Disclosure*

10. On or about August 10, 2026, Plaintiff requested a copy of Plaintiff's consumer file disclosure from Equifax.

11. Pursuant to 15 U.S.C. § 1681g(a)(1), upon receipt of Plaintiff's request Equifax was required to "clearly and accurately" disclose all information in Plaintiff's file at the time of the request, subject only to the limited exception that Plaintiff's Social Security number could be truncated upon request.

12. In response, Equifax produced a thirty-page consumer file disclosure dated August 10, 2026 and bearing Confirmation Number 6222599923 ("Equifax's Disclosure"). SEE PLAINTIFF'S EXHIBIT A.

13. Equifax's Disclosure truncated Plaintiff's Social Security number, as the statute permits. Equifax's Disclosure also omitted entire categories of information contained in Plaintiff's file for which no statutory exception exists.

## EQUIFAX'S DISCLOSURE WAS NOT COMPLETE, CLEAR, OR ACCURATE

### *Omission of the Original Creditor Names on the LVNV Debt-Buyer Tradelines*

14. Equifax's Disclosure listed two tradelines furnished by LVNV Funding LLC ("LVNV"), each of which Equifax expressly identified by Loan/Account Type as a "Debt Buyer Account":

a. LVNV Funding LLC, account number ending 9928, reported with a balance of $4,132.00, high credit of $3,739.00, and a Date of 1st Delinquency of September 8, 2023; and

b. LVNV Funding LLC, account number ending 3187, reported with a balance of $45,307.00, high credit of $45,382.00, and a Date of 1st Delinquency of April 7, 2023.

15. LVNV is a debt buyer — a company whose primary business is the purchase and collection of debts that were originally owed to third parties. LVNV does not extend credit to consumers and cannot be the original creditor of any account it reports.

16. Equifax's own Disclosure confirms LVNV's role. Each LVNV tradeline is coded with Narrative Code 057, which Equifax's Disclosure itself defines on its face as "Collection Account," and each is reported in care of Resurgent Capital Services, L.P., a servicer rather than a creditor.

17. Notwithstanding, Equifax's Disclosure did not identify the original creditor of either LVNV tradeline. No original creditor name appears anywhere in Equifax's Disclosure for the account ending 9928 or for the account ending 3187.

18. The two unidentified LVNV tradelines account for $49,439.00 in reported debt — the two largest reported obligations on Plaintiff's entire file.

19. Because Equifax withheld the original creditor names, Plaintiff was unable to determine from Equifax's Disclosure who originally extended the credit, when it was extended, whether the underlying obligations in fact belonged to Plaintiff, whether the two tradelines duplicated one another or duplicated any other tradeline in Plaintiff's file, or whether the reported dates of first delinquency were accurate.

20. The *Credit Reporting Resource Guide* ("CRRG"), published by the Consumer Data Industry Association ("CDIA"), a trade association whose members include Equifax, states that the purpose of reporting the original creditor name is to help consumers identify the source of accounts appearing on their credit reports, and that without it consumers may not know what the accounts represent. SEE PLAINTIFF'S EXHIBIT C.

21. The CRRG further instructs debt collectors and debt buyers to report, in the K1 Segment, the name of the company or creditor that originally opened the account for the consumer. *Id.*

22. On information and belief, LVNV complied with the CRRG and reported the names of the true original creditors of its two tradelines to Equifax, and those names were contained within Equifax's file regarding Plaintiff at the time of Plaintiff's request.

23. When Equifax prepares and sells consumer reports regarding Plaintiff to third parties, the full account numbers and the names of the original creditors are included in those reports.

24. The completeness of Equifax's reports to third parties demonstrates both the actual contents of Equifax's file regarding Plaintiff and Equifax's ability to comply with 15 U.S.C. § 1681g(a)(1).

***Equifax Disclosed the Original Creditor for a Different Account on the Same Disclosure***

25. Equifax's Disclosure contains a separate section entitled "Collections," which states on its face that collection accounts are accounts placed by a creditor with a collection agency or sold to a debt buyer, and that such accounts may remain on a consumer's credit report for up to seven years from the date the consumer first missed a payment to the original lender or creditor.

26. Within that section, Equifax disclosed a single tradeline furnished by Credit Collections, account number ending 4617.

27. For that tradeline, Equifax populated a dedicated data field labeled "Original Creditor" and disclosed the original creditor as "PROGRESSIVE." Equifax likewise populated fields labeled "Creditor Classification," "Assigned," "Collection Reported," "Last Payment Date," and "Status."

28. Equifax's disclosure of the original creditor for the Credit Collections tradeline establishes that Equifax maintains original-creditor data in its files, that Equifax's disclosure template contains a field designated for that data, and that Equifax is fully capable of populating that field.

29. The omission of the original creditor for the two LVNV tradelines was therefore selective. It was not the product of any formatting constraint, template limitation, or systemic inability, because Equifax disclosed precisely that data element for another collection account on the very same Disclosure.

30. Compounding the omission, Equifax placed the two LVNV tradelines — accounts Equifax itself coded as collection accounts and typed as "Debt Buyer Account[s]" — under the heading "Credit Accounts," which Equifax's Disclosure defines as encompassing revolving accounts, mortgage accounts, installment loans, and open lines of credit.

31. Had Equifax disclosed the LVNV tradelines within the "Collections" section of its own Disclosure, where its own Narrative Code 057 designation places them, the original creditor field would have been presented to Plaintiff as it was for the Credit Collections tradeline. Equifax's miscategorization thus deprived Plaintiff of information Equifax's own template would otherwise have supplied.

***Omission of the Full Account Numbers***

32. Equifax omitted the full account number of every single tradeline disclosed.

33. Equifax's Disclosure reports twenty-seven credit accounts and one collection account. Each is identified only by a truncated four-digit string preceded by an asterisk — for example, "*9928," "*3187," "*5375," and "*4617."

34. On information and belief, each furnisher supplied Equifax with the complete account number for its respective account, and each complete account number was contained within Equifax's file regarding Plaintiff at the time of Plaintiff's request.

35. Because of pervasive system deficiencies, Equifax's automated processes truncate account numbers — displaying only the last two or four digits — across every category of account appearing on a consumer file disclosure. Equifax has long known of this defect and, despite such knowledge, has failed to correct it.

36. The failure to disclose full account numbers violates the FCRA's requirement that a consumer reporting agency disclose all information contained in a consumer's file clearly and accurately. *See Washington v. Equifax Info. Servs., LLC*, No. 3:19-cv-00154 (M.D. Tenn. June 12, 2019) (holding that, in the absence of binding authority establishing that a truncated account number is a clear and accurate disclosure, a plaintiff states a plausible claim for violation of Section 609 of the FCRA).

37. Further, in a 2000 advisory opinion, the Federal Trade Commission concluded that a consumer reporting agency that always scrambles or truncates account numbers does not technically comply with Section 609, because it does not provide an accurate — and perhaps not a clear — disclosure of all information in the file. FTC Advisory Opinion to Darcy (June 30, 2000). SEE PLAINTIFF'S EXHIBIT B.

38. The withholding of full account numbers was particularly consequential here because Plaintiff's file contains multiple tradelines furnished by the same creditor, distinguishable from one another only by the digits Equifax refused to disclose: four separate Navy Federal Credit Union tradelines, four separate Capital One Bank USA, N.A. tradelines, three separate Department of Education tradelines, two separate Sam's Furniture tradelines, two separate TBOM/Fortiva tradelines, and two separate Idaho Housing & Finance tradelines.

***Omission of Account Status and Related Data Fields***

39. Equifax's Disclosure includes, for each credit account, a data field labeled "Status." Equifax populated that field for twenty-five of the twenty-seven credit accounts disclosed, with entries such as "Pays As Agreed" and "Account closed; was over 120 Days Past Due."

40. For both LVNV tradelines, Equifax left the "Status" field entirely blank.

41. Both LVNV tradelines are captioned on the face of Equifax's Disclosure as "LVNV FUNDING LLC - Closed," yet Equifax left the "Date Closed" field blank for each, while populating that same field for other closed accounts on the same Disclosure — for example, January 4, 2025 for the account ending 8030, November 1, 2023 for the account ending 8749, and March 1, 2020 for the account ending 8320.

42. Equifax additionally left blank, for both LVNV tradelines, the following data fields: Date of Last Activity, Terms Frequency, Scheduled Payment Amount, Actual Payment Amount, Date of Last Payment, Term Duration, Charge Off Amount, Activity Designator, Credit Limit, Deferred Payment Start Date, Balloon Payment Amount, and Balloon Payment Date.

43. These omissions were likewise selective, as Equifax populated those same fields for numerous other accounts appearing on the same Disclosure.

***Omission of Payment History***

44. Equifax's Disclosure represents to consumers that payment history is provided, where available, for each account.

45. Notwithstanding, Equifax provided no payment history grid whatsoever for seven tradelines: Dept of Ed/Aidvantage ending 0220 (44 months reviewed), Dept of Ed ending 0247 (25 months reviewed), Dept of Ed ending 0347 (25 months reviewed), Self Financial, Inc. ending 6570 (22 months reviewed), Sam's Furniture ending 9369 (15 months

reviewed), Sam's Furniture ending 2952 (4 months reviewed), and Ally Financial ending 2421 (17 months reviewed).

46. Where Equifax did provide a history, that history contained unexplained gaps within periods the account was open and reporting. By way of example, the twenty-four-month history for Hyundai Motor Finance Co., account ending 8430, omits October 2024, January 2025, August 2025, September 2025, and December 2025 entirely, while displaying entries for the months immediately preceding and following each gap. The twenty-four-month history for Lentegrity LLC, account ending 4609, omits July 2024 and February 2025. The twenty-four-month history for Capital One Bank USA, N.A., account ending 5375, omits May 2025.

47. For both LVNV tradelines, Equifax reported a collection rating for each of the twenty-one months of history displayed while showing no data whatsoever, for any of those months, in the Scheduled Payment Amount, Actual Payment Amount, Last Payment Date, and Credit Limit columns.

48. A monthly derogatory rating disclosed without any corresponding payment, scheduled-payment, or credit-limit data cannot be evaluated or verified by the consumer against the consumer's own records, which is the precise purpose the disclosure requirement of 15 U.S.C. § 1681g(a)(1) exists to serve.

***Prevalence of Equifax's Errors***

49. On information and belief, Equifax produced Plaintiff's Disclosure using an automated template that pulls data from its database and inserts it into preset fields of its consumer

disclosure format, and this same template is used virtually every time a consumer requests a file disclosure from Equifax.

50. On information and belief, consumer file disclosures produced through that template uniformly exhibit the same truncated account number and omitted original creditor defects that appear in Plaintiff's Disclosure.

51. Equifax's defective template has therefore likely affected thousands of consumers.

52. Despite being aware of these defects for years, Equifax has taken no corrective action. *See, e.g., Purdy v. Equifax Info. Servs., LLC*, No. 8:19-cv-00217 (M.D. Fla. Jan. 28, 2019); *Washington v. Equifax Info. Servs., LLC*, No. 3:19-cv-00154 (M.D. Tenn. June 12, 2019).

53. Equifax's failure to disclose all of the information in a consumer's file in response to a statutorily mandated disclosure request is an intentional violation of 15 U.S.C. § 1681g(a), motivated by Equifax's desire to avoid cost and increase profit.

54. Any construction of 15 U.S.C. § 1681g(a)(1) under which a truncated account number and an omitted original creditor name constitute a "clear and accurate" disclosure of "all information in the consumer's file" is objectively unreasonable. No court of appeals has endorsed that construction, and the only federal agency guidance addressing the question rejects it. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 69-70 (2007).

55. Equifax's knowing, systemic, and repeated conduct warrants an award of punitive damages.

***Injury and Damages***

56. Plaintiff has a right to a full and complete disclosure of the contents of Plaintiff's file upon request, at least once every twelve months and without charge, and that disclosure must be presented clearly and accurately. 15 U.S.C. §§ 1681g, 1681j.

57. Equifax's failure to accurately, fully, and clearly disclose the information within its files regarding Plaintiff deprived Plaintiff of that right.

58. Plaintiff requested the Disclosure at a time when the contents of Plaintiff's credit file were of immediate and practical consequence. Equifax's own Disclosure reflects hard inquiries by ten separate credit grantors within the preceding two years — including Wells Fargo Auto, Hyundai Motor Finance Corp., CCF Intermediate Holdings LLC, Capital One, Global Lending Services LLC, AmeriCredit Financial Services, Ally Financial, and Flagship Credit Acceptance — the most recent of which occurred on July 24, 2026.

59. As a direct and proximate result of Equifax's omissions, Plaintiff could not identify the source of the two largest reported obligations in Plaintiff's file, totaling $49,439.00; could not match those obligations against Plaintiff's own records; could not determine whether they were duplicative of one another or of any other tradeline; and could not evaluate whether the reported delinquency dates and balances were accurate.

60. Plaintiff was likewise unable to distinguish among the multiple tradelines furnished by the same creditors, each identified only by four digits, and was therefore unable to reconcile Equifax's Disclosure against Plaintiff's own records.

61. The omissions obstructed Plaintiff's ability to exercise the dispute rights conferred by 15 U.S.C. § 1681i, because a consumer cannot meaningfully identify, investigate, or dispute information the consumer has never been given.

62. Plaintiff expended time and effort attempting to decipher Equifax's Disclosure and to reconcile it against Plaintiff's own records, and suffered frustration, confusion, and emotional distress as a result of Equifax's conduct.

63. The denial of information to which a plaintiff is statutorily entitled, together with the downstream consequences of that denial, is a concrete injury-in-fact sufficient to confer standing under Article III. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982); *TransUnion LLC v. Ramirez*, 594 U.S. 413, 441 (2021).

64. Plaintiff has retained the undersigned counsel to represent Plaintiff in this matter and has assigned to counsel the right to obtain reimbursement of reasonable attorney's fees and costs.

## **COUNT I**

## **EQUIFAX INFORMATION SERVICES, LLC**

## **WILLFUL VIOLATIONS OF 15 U.S.C. § 1681g**

65. Plaintiff adopts and incorporates paragraphs 1 through 64 as if fully stated herein.

66. Equifax willfully violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for Plaintiff's consumer file disclosure by failing to clearly and accurately disclose to Plaintiff, a consumer, all of the information in Plaintiff's file at the time of the request. Specifically, Equifax disclosed the tradelines reported by LVNV without disclosing the

full account numbers or the names of the original creditors, disclosed every remaining tradeline without the full account number, omitted the account status and related data fields for the LVNV tradelines, and omitted payment history maintained in its files — even though the full account numbers, original creditor names, status information, and payment history were reported by the data furnishers to Equifax and were maintained within Equifax's file regarding Plaintiff.

67. Equifax's violations were willful. Equifax knew or should have known that the information at issue was maintained within its file and was required to be disclosed under 15 U.S.C. § 1681g(a)(1), and Equifax's longstanding awareness of these systemic disclosure failures — which have been identified and litigated by other consumers for years — confirms that its conduct was knowing or, at minimum, in reckless disregard of its statutory obligations.

68. Equifax is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681n, for the greater of Plaintiff's actual damages and statutory damages of up to $1,000.00 per violation, plus punitive damages, attorney's fees, and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant Equifax Information Services, LLC, awarding Plaintiff the following relief:

a. The greater of Plaintiff's actual damages and statutory damages of $1,000.00 per violation, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages, pursuant to 15 U.S.C. § 1681n(a)(2);

c. Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3); and

d. Such other and further relief as this Court deems just and proper.

## COUNT II

## EQUIFAX INFORMATION SERVICES, LLC

## NEGLIGENT VIOLATIONS OF 15 U.S.C. § 1681g

69. Plaintiff adopts and incorporates paragraphs 1 through 64 as if fully stated herein.

70. Alternatively, Equifax negligently violated 15 U.S.C. § 1681g(a)(1) when responding to Plaintiff's request for Plaintiff's consumer file disclosure by failing to clearly and accurately disclose to Plaintiff, a consumer, all of the information in Plaintiff's file at the time of the request. Specifically, Equifax disclosed the tradelines reported by LVNV without disclosing the full account numbers or the names of the original creditors, disclosed every remaining tradeline without the full account number, omitted the account status and related data fields for the LVNV tradelines, and omitted payment history maintained in its files — even though that information was reported by the data furnishers to Equifax and was maintained within Equifax's file regarding Plaintiff.

71. Equifax had a legal duty to provide Plaintiff with a clear and accurate disclosure of all information within its file at the time of Plaintiff's request.

72. Equifax breached that duty as set forth above.

73. Equifax is therefore liable to Plaintiff, pursuant to 15 U.S.C. § 1681o, for Plaintiff's actual damages, plus attorney's fees and costs.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant Equifax Information Services, LLC, awarding Plaintiff the following relief:

a. Plaintiff's actual damages, pursuant to 15 U.S.C. § 1681o(a)(1);

b. Costs and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681o(a)(2); and

c. Such other and further relief as this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

74. Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: This 15th August 2026.

Respectfully submitted,

**/s/ Esther Oise**
**Esther Oise, Esq.**
Georgia Bar No. 686342
OISE LAW GROUP, P.C.
2635 Governors Walk Blvd
Snellville, GA 30039
Tel: (770) 895-3736
Fax: (980) 265-8981
oiselaw@gmail.com

*Counsel for Plaintiff*

**ATTACHED EXHIBIT LIST**

A. Plaintiff's Equifax Consumer File Disclosure, dated August 10, 2026 (Confirmation No. 6222599923).

B. FTC Advisory Opinion to Darcy, dated June 30, 2000.

C. Excerpts from the CDIA Credit Reporting Resource Guide (K1 Segment — Original Creditor Name).